UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
TOYOTA LEASE TRUST,

Plaintiff,

- against -

A-1 GRAND AUTOBODY, INC. AND BRIAN HOGAN,

Defendants.
---------------------------------------------------------- x

**MEMORANDUM & ORDER**

2:18-CV-3098 (RJD)(VMS)

DEARIE, District Judge:

Plaintiff Toyota Lease Trust ("Toyota" or "Plaintiff"), a subsidiary of Toyota Motor Credit Corporation, leases Toyota vehicles for commercial and personal use. Plaintiff brings a procedural due process claim pursuant to 42 U.S.C. § 1983 and related claims under New York law against A-1 Grand Autobody, Inc. and its owner Brian Hogan (collectively, "Defendants"). Defendants are agents of Nassau County pursuant to a personal service agreement and, acting on behalf of the Nassau County Police Department, tow and detain vehicles at the direction of Nassau County Police officers. Defendants move to dismiss the complaint principally because adjudication of Plaintiff's claims would require the Court to improperly weigh in on the constitutionality of a state statutory scheme—New York Lien Law. Accordingly, Defendants move to dismiss on the grounds of (i) the Burford or Colorado River abstention doctrines, or (ii) failing to join two "necessary and indispensable" parties—Ms. Shatina Finley ("Finley"), the lessee of the vehicle towed by Defendants, and the Nassau County Police Department, who Defendants contend have an important interest in the constitutionality of New York Lien Law. In the alternative, Defendants request, and Plaintiff agrees, that this case should be consolidated with American Honda Finance Corp. v. A-1 Grand Autobody Inc. and Brian Hogan, 2:18-cv-

4513. For the reasons set forth below, Defendants' motion to dismiss is denied and the motion to consolidate is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2016, Defendants seized a Toyota-brand vehicle, leased to Ms. Finley, at the direction of Nassau County Police officers in connection with an unrelated criminal proceeding involving Ms. Finley. Complaint, ECF No.1, ¶¶ 15-18; Pl. Opp. Br., ECF No. 24, at 4; Feb. 8, 2019 Oral Argument Tr., ECF No. 31, at 12. On June 22, 2016, Nassau County Police advised Plaintiff it could recover possession of the vehicle and Plaintiff subsequently obtained a formal release from Nassau County Police. Complaint, ECF No.1, ¶¶ 20-21. As alleged in the Complaint, at no time prior to obtaining the formal release and contacting Defendants to recover the vehicle did Defendants notify Plaintiff of any fees or charges due as a condition for recovering the vehicle or that a lien would be levied in the amount of those charges in the event of non-payment. Id. ¶ 22. New York Lien Law requires notice under these circumstances and provides, in relevant part:

> A person who tows and stores a motor vehicle at the request of a law enforcement officer authorized to remove such motor vehicle shall be entitled to a lien for the reasonable costs of such towing and storage provided that such person, within five working days from the initial towing, mails to the owner of said motor vehicle a notice by certified mail return receipt requested that contains the name of the person who towed and is storing said motor vehicle, the amount that is being claimed for such towing and storage, and the address and times at which said motor vehicle may be recovered. Such notice shall further state that the person mailing said notice claims a lien on said motor vehicle and that said motor vehicle shall be released to the owner thereof or his or her lawfully designated representative upon full payment of all charges accrued to the date that said motor vehicle is released. A person who mails the foregoing notice within said five-day period shall be entitled to a lien for storage from and after the date of initial towing, but a person who fails to mail such notice within said five-day period shall only be entitled to a lien for storage from and after the date that the notice was mailed. A failure to mail such notice in a timely fashion shall not affect a lien for towing.

NY Lien Law § 184(2). Nevertheless, when Plaintiff attempted to recover the vehicle, Defendants allegedly "demanded payment of towing and storage charges as a condition for release" and "claimed a lien on the vehicle" for those charges. Id. ¶¶ 24-25.

Plaintiff initiated a special proceeding in New York State Supreme Court seeking an order declaring Defendants' lien null and void and that the vehicle be returned to Plaintiff. On November 21, 2016, Justice Melkonian of the New York Supreme Court granted Plaintiff's petition and ordered the lien cancelled with respect to "garaging, repairing and storing" charges, and that the subject vehicle be delivered to Plaintiff. ECF No. 26-2. Defendants did not comply and in April 2017 Justice Melkonian found Defendants in contempt of Court, levied a $12,200 fine based on the value of the vehicle, and ordered the vehicle be delivered to Plaintiff. ECF No. 26-3. Defendants did not comply with the Court's contempt order and in September 2018, Justice Melkonian ordered damages, including attorney's fees, exceeding $15,000 against Defendants.[1] ECF No. 26-4. Plaintiff filed this action in federal court on May 25, 2018, alleging deprivation of a protected property interest without due process of law.

## DISCUSSION

### I. Burford Abstention

#### *a. Legal Standard*

Under the Burford abstention doctrine, a federal court, sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies where timely and adequate state-court review is available and when (i) there are difficult questions of state law

[1] Though otherwise limited to the facts as alleged in the Complaint on a motion to dismiss, the Court takes judicial notice of the court documents publicly filed in the New York Supreme Court Special Proceeding and attached to the parties' filings. Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts...not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings").

bearing on policy problems of substantial public import whose importance transcends the result in the case at bar or (ii) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989); Liberty Mutual Insurance Company v. Hurlbut, 585 F.3d 639, 649-50 (2d Cir. 2009). However, "abstention is the exception, exercise of jurisdiction the rule," Hachamovitch v. DeBuono, 159 F.3d 687, 697 (2d Cir. 1998), and in determining whether abstention is appropriate, the Court must be satisfied that there exists "extraordinary circumstances" requiring the Court to decline "its virtually unflagging obligation . . . to exercise the jurisdiction given [to it]," Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). To that end, courts in the Second Circuit consider (i) the degree of specificity of the state regulatory scheme; (ii) the need to give one or another debatable construction to a state statute, and (iii) whether the subject matter of the litigation is traditionally one of state concern. Hachamovitch, 159 F.3d at 697.

*b. Application*

Defendants argue the Court should dismiss this action pursuant to the Burford abstention doctrine because otherwise the Court would be tasked with "directly interfer[ing] with the interpretation of a detailed scheme of state lien law and how someone assigned by the Nassau County Police Department to hold a vehicle seized by the police complies with the directives under the lien law." Defs.' Br., ECF No. 23-1, at 6. On the other hand, Plaintiff contends Burford abstention is inappropriate because (i) the doctrine is limited to cases involving state administrative agencies and complex state administrative processes not present in this case, and in any event, (ii) this case does not "arise from the application of New York state lien law" but

rather "from the Federal and New York State constitutions, which require a holding that Defendants violated Toyota's due process rights, no matter what the New York State Lien Law does or does not say." Pl. Opp. Br., ECF No. 24, at 7-9.

First, irrespective of whether Burford applies to "special proceedings" commenced pursuant to New York Lien Law in New York Supreme Court, Plaintiff's claims relate to the constitutionality of Defendant's conduct regardless of what New York Lien Law permits.[2] Specifically, Plaintiff's claims pertain to whether the lien levied on its vehicle, deprived Plaintiff of a property interest without notice or an opportunity to be heard. As alleged in the Complaint, these claims relate to the constitutionality of Defendants' conduct and thus there is no state law inquiry or analysis embedded within that claim. Accordingly, "[t]he danger which Burford abstention avoids"—"undue federal interference" in state administrative processes—"is simply not present in this case," because there is no challenge to a state administrative scheme or a "difficult question[] of state law bearing on policy problems of substantial public import" on the face of the complaint. Dittmer v. County of Suffolk, 146 F.3d 113, 117 (2d Cir. 1998); Minot, 13 F.3d at 593.

Second, even if Plaintiff was calling upon the Court to determine the constitutionality of New York Lien Law, which it is not, such a claim would not compel abstention, particularly where Plaintiff challenges "the constitutionality of the statute" rather than "offer a collateral attack on a final determination made by [a] Commission or seek[ing] to influence a state

[2] Though the Burford doctrine is typically invoked with respect to state administrative proceedings involving a state administrative agency—circumstances which are absent here—its application to a special proceeding in New York Supreme Court, though tenuous, is not entirely foreclosed. See Ankenbrandt v. Richards, 504 U.S. 689, 705-06 (1992); Minot v. Eckhardt-Minot, 13 F.3d 590, 593 (2d Cir. 1994) (though the underlying action involved no state administrative agency, it was nevertheless "a paradigmatic example of a case presenting difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar" warranting abstention). The Court notes, however, that both Ankenbrandt and Minot were diversity cases requiring the federal court to consider questions of state domestic relations law whereas here, Plaintiff brings claims arising principally under the U.S. Constitution.

administrative proceeding." Id. (concluding "federal courts are particularly suited to adjudicate" "a direct facial attack on the constitutionality of a state statute"); see also Alliance of American Insurers v. Cuomo, 854 F.2d 591, 601 (2d Cir. 1988) (abstention inappropriate in constitutional challenge to New York state medical malpractice law where complaint "involve[d] the unconstitutionality of a state statute on due process and takings grounds under the United States Constitution, rather than the acts of the Superintendent [of the Department of Insurance] under state law"). Because in the first instance Plaintiff's claims do not even purport to challenge a state law, policy, or administrative scheme, the Court finds Burford abstention inapplicable. However, even if Plaintiff's claims required analysis and interpretation of New York Lien Law, asking a federal court to assess the constitutionality of that law would not run afoul of the principles underlying Burford abstention.

II. Colorado River Abstention

*a. Legal Standard*

The Colorado River abstention doctrine provides an exception in certain circumstances with "truly unusual facts," to the general rule that "the pendency of an action in the state is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976). In dismissing a federal action pursuant to Colorado River abstention courts must consider factors including (i) the inconvenience of the federal forum, (ii) the order in which jurisdiction was obtained by the concurrent forums and (iii) the desire to avoid piecemeal litigation; however, "[n]o one factor is necessarily determinative" and "[o]nly the clearest of justifications will warrant dismissal." Id. at 818-19.

*b. Application*

Notwithstanding Defendants' contention that this lawsuit "is an attempt by Plaintiff to split their claim to forum shop different facets of the claim," Colorado River abstention is inapplicable here. First, there are no concurrent federal and state court proceedings. The state court proceeding, which was specifically focused on the validity of the Defendants' lien and Defendants' compliance, or lack thereof, with New York Lien Law is over. Plaintiff now brings a separate action contending that Defendants' conduct, irrespective of New York Lien law, violated Plaintiff's constitutional right to due process of law.

Second, this is not an example of "piecemeal litigation" or otherwise an attempt to forum shop—Plaintiff initiated a Special Proceeding in New York Supreme Court pursuant to NY Lien Law § 201-a which was limited to "determin[ing] the validity of the lien." NY Lien Law § 201-a. Unlike Colorado River, where the Supreme Court concluded that permitting two concurrent federal and state proceedings would run contrary to "[t]he clear federal policy" in favor of avoiding "piecemeal adjudication of water rights in a river system . . . best conducted in unified proceedings," that degree of interconnectedness is absent here. In Colorado River, allowing independent state and federal judicial officers to simultaneously divvy up parts to the same whole like two ships passing in the night was inefficient, impractical and ripe for conflict. However, those concerns are inapplicable to this case: one limited Special Proceeding specifically determined Defendants acted outside New York Lien Law and a separate federal proceeding now seeks relief for an alleged constitutional violation arising out of the same conduct.

III. Motion to Dismiss for Failure to Join an Indispensable Party

*a. Legal Standard*

A party may seek dismissal under Rule 12(b)(7) for failure to join an indispensable party where (i) the absent party is "required," (ii) joining the absent party would not be "feasible," and (iii) "it is determined in equity and good conscience that the action should not proceed among the existing parties." Garner v. Behrman Bros IV, LLC, 260 F. Supp. 3d 369, 380 (S.D.N.Y. 2017); see also Fed. R. Civ. P. 19. To determine whether an absent party is "required" the Court looks to Fed. R. Civ. P 19(a) and whether:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
>
> > (i) as a practical matter impair or impede the person's ability to protect that interest, or
> >
> > (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Id. If the court determines that a party is "required" under Rule 19(a) but joinder would not be feasible, the court must then assess whether in equity and good conscience the action should proceed among the parties before it or should be dismissed because the absent party is "indispensable" under Fed. R. Civ. P. 19(b). Though Defendants' motion is styled as a motion to dismiss for failure to join "necessary or indispensable parties," Defendants never argue that joining Ms. Finley or Nassau County would not be feasible and that, as a result, "in equity and good conscience" the action could not proceed. Therefore, the Court will only consider whether these parties must be joined under Rule 19(a) and not whether the entire action must be dismissed because joinder would not be feasible under Rule 19(b).

*b. Neither Ms. Finley nor Nassau County are required or indispensable parties.*

Defendants contend that because "Plaintiff is seeking a determination that lien law used by the Police Department and its employment of the Defendant to tow and store Ms. Finley's vehicle is improper and unconstitutional," "Nassau County and its Police Department are clearly necessary and indispensable parties." Defs.' Br., ECF No. 23-1, at 10. Moreover, Defendants assert that Ms. Finley must be included because "her actions and violations of State and County law...led to the Nassau County Police impounding the lessee's vehicle on June 5, 2018." Id. at 9. However, Plaintiff responds that "[n]othing about this case involves the lien law as it [was] applied by Nassau County and its police" and "Ms. Finley's actions—whatever they were—violated some other law, not the lien law."' Pl. Opp. Br., ECF No. 24, at 18. As a result, Plaintiff maintains that because "Toyota is not challenging (a) the initial seizure, nor (b) any other action by Nassau County," neither Ms. Finley nor Nassau County are required or indispensable parties. Id.

First, Ms. Finley is not a required party. Plaintiff's section 1983 claim alleges procedural due process violations for Defendants' conduct *after* towing Ms. Finley's car. As Plaintiff correctly asserts, it does not challenge whether the seizure of the car itself was appropriate pursuant to some other State or County criminal law. Therefore, Ms. Finley's actions leading to the car's seizure are wholly irrelevant to the substance of Plaintiff's due process claims. Those claims are limited to Defendants' actions after the seizure of the car *and* after Nassau County issued a formal release for the car. Not only is Ms. Finley not a necessary party "because the Court can afford complete relief to Plaintiff against the Defendants in the absence of [Ms. Finley]," Edrich v. Festinger, 2017 WL 3575238, at *4 (E.D.N.Y. Aug. 17, 2017) (citing Arkwright Boston Mfrs. Mut. Ins. Co. v. New York, 762 F.2d 205, 209 (2d Cir. 1985)), but also

Ms. Finley has not asserted any interest "that may not be adequately protected by the...defendants in the present litigation," Legal Aid Society v. City of New York, 114 F. Supp. 2d 204, 220 (S.D.N.Y. 2000); see also Peregrine Nyan Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996). Because Ms. Finley has no demonstrated interest in this litigation and her conduct does not bear on Plaintiff's procedural due process claims, she is neither a necessary nor indispensable party and need not be joined pursuant to Fed. R. Civ. P. 19.

Second, Nassau County is not a required party. Defendants contend Nassau County must be joined because of its interest in the interpretation of New York Lien Law as it applies to its vehicle towing and storage arrangements with third parties; however, as alleged in the Complaint, Plaintiff's principal claim is that Defendants' conduct deprived Plaintiff of its right to due process, a claim that does not require interpretation of New York Lien Law.

Even if New York Lien Law applied, it does not apply to Nassau County. NY Lien Law § 184 (New York Lien Law applies to "garage keepers"). Nassau County surely relies on those it contracts with to abide by applicable laws, but it has no independent interest in those laws. The "legality of" New York Lien Law thus does not "prejudice" Nassau County, but rather guides the conduct of those the County contracts with—including the Defendants—to effectuate a seizure of property. Def. Br., ECF No. 23-1, at 11. Defendants alleged failure to comply with the U.S. Constitution following that seizure does not compel joinder of Nassau County and, even if Defendants later assert Nassau County bears some responsibility for the alleged constitutional violation, they need not be joined to afford Plaintiff complete relief. Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7-8 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit" because joint tortfeasors are "merely permissive parties").

IV. Motion to Consolidate

Under Fed. R. Civ. P. 42 a court may consolidate multiple actions "that involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). Courts may consolidate cases under Rule 42 to "expedite trial and eliminate unnecessary repetition and confusion" and preserve judicial economy "when savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Devlin v. Transportation Commcn's Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999).

Here, both actions relate to the constitutionality of Defendants' conduct and whether such conduct deprived each Plaintiff of property without due process of law. Moreover, all parties, including Plaintiff in the Honda action, agree that consolidation is appropriate if Defendants' motion is denied. Because these actions bring the same claims and relate to the same conduct of the same Defendant, judicial economy points in favor of consolidation, which will ensure consistent decision-making with respect to virtually identical claims.

**CONCLUSION**

For the reasons stated herein, Defendants motion to dismiss is denied in its entirety and the motion to consolidate with 2:18-cv-4513 is granted.

SO ORDERED.

Dated: Brooklyn, New York
June 20, 2019

s/Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge